UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | CR-05-24-B-W |
| | ) | |
| | ) | |
| LARRY N. PERKINS, | ) | |
| Defendant. | ) | |

**SENTENCING ORDER**

This Court concludes that the Defendant's violation of a protective order counts as a prior conviction under U.S.S.G. § 4A1.1 and is not excluded as a crime "similar to…contempt of court" under U.S.S.G. § 4A1.2(c), that whether the Defendant did "possess a firearm… in connection with" his drug offense under U.S.S.G. § 5C1.2(a)(2) awaits evidentiary development at the sentencing hearing, that whether the Defendant has "truthfully provided to the Government all information and evidence the defendant has concerning the offense" under U.S.S.G. § 5C1.2(a)(5) similarly awaits evidentiary development, and that the standard for determining drug quantity under U.S.S.G. § 2D1.1(c) is more likely than not, rather than beyond a reasonable doubt.

### I. Procedural History

On April 11, 2005, Mr. Perkins pleaded guilty to possession with intent to manufacture 50 or more marijuana plants and unlawful possession of a firearm after being convicted of a misdemeanor crime of domestic violence.[1] *Information* (Docket # 1). A Presentence Investigation Report (PSR) was prepared, and Defendant raised a number of objections. Defendant filed a presentencing brief on September 19, 2005

---

[1] He also consented to a third count for forfeiture of $25,000.00 as a substitute for property used to commit or facilitate the drug possession count and of $1,250.00 in cash seized from the property.

(Docket # 24); the Government responded with a sentencing memorandum on October 7, 2005. (Docket # 27). The Defendant replied on October 14, 2005 (Docket # 28). Mr. Perkins privately retained new counsel in November of 2005 and by letter dated January 13, 2006, new counsel raised no additional objections, but preserved previous objections.[2]

## II. Discussion

### a. Safety Valve

#### i. Criminal History Category: § 5C1.2(a)(1)

On November 30, 2000, Mr. Perkins violated an Amended Order for Protection[3] dated June 12, 2000 when he contacted a protected individual outside of the scope of permissible contact.[4] This violation constituted a Class D crime in the state of Maine, and on April 11, 2001, Mr. Perkins pleaded guilty in Maine District Court and was fined $1,500.00. He received no jail time and was not placed on probation. The PSR assigned one criminal history point to this conviction.

Whether this conviction is assigned a criminal history point is a matter of no small moment to Mr. Perkins. As calculated by the Probation Office, his adjusted offense level is 15 and, if his criminal history category is I, his sentencing range could be 18 to 24 months. However, when this criminal history point is added,[5] it results in a total criminal

---

[2] On February 24, 2006, Mr. Perkins moved to withdraw his guilty plea. *Mot. to Withdraw Guilty Plea* (Docket # 44). This Court held a hearing on the motion on March 1, 2006 and at the close of the hearing, denied it. *Oral Order denying Mot. to Withdraw* (Docket # 48).

[3] Court orders protecting one individual from another are variously referred to as protection orders or protective orders. Here, this Court uses "protective orders", since this is the term used in the body of the Maine statute. 19-A M.R.S.A. §§ 4007, 4011.

[4] Mr. Perkins' conviction is set forth in the PSR; the Defendant has not objected to the fact of the conviction, only to its significance.

[5] On March 11, 1998, Mr. Perkins was convicted of Assault Class D in Maine District Court and was sentenced to 45 days in jail, all but 3 days suspended, and one year probation. His probation was subsequently revoked and he was sentenced to 42 days in jail, which was again suspended and his

history point score of two and a criminal history category of II, U.S.S.G. Ch. 5, Part A, and makes him ineligible for the safety valve reduction under § 5C1.2(a)(1). *See* U.S.S.G. § 5C1.2(a)(1)(to be eligible the Defendant cannot "have more than 1 criminal history point"). Consequently, if the April 11, 2001 conviction is countable, this Court must impose the statutory mandatory minimum sentence of 60 months.[6]

To determine a defendant's criminal history category, the Court must assign points to certain prior sentences. U.S.S.G. § 4A1.1. U.S.S.G. § 4A1.2(c), however, exempts sentences for misdemeanor and petty offenses which are "similar to…contempt of court", provided the sentence was for a term of imprisonment less than thirty days or a term of probation less than one year. *Id.* at (1). Defendant argues his prior sentence for violating a protective order is analogous to contempt of court. *Def.'s Presentencing Brief* at 3-4. He notes that, like contempt of court, a violation of a protective order is contained in a statutory section that otherwise contains only civil violations and that his guilty plea resulted in no jail time. *Id.* The Government responds that "the crimes of Violating a Protective Order and Contempt of Court are not sufficiently similar to exclude the former under § 4A1.2(c) because Violating a Protective Order poses a markedly greater risk of harm than a contempt conviction." *Gov.'s Mem. in Aid of Sentencing* at 2.

In *United States v. Unger,* 915 F.2d 759 (1st Cir. 1990), the First Circuit stated that to determine whether a conviction is "similar to" a listed offense under § 4A1.2(c), a court should look to "the substance of the underlying state offense" rather than give controlling effect to the state classification. *Id.* at 762-63. *See also United States v. May,* 343 F.3d 1, 9 (1st Cir. 2003). As *Unger* explained, the "classification of an offense as

---

probation terminated. Mr. Perkins has not contested the assignment of one criminal history point to this conviction.
[6] This assumes 21 U.S.C. § 841(b)(1)(B) applies.

3

within or without the ambit of section 4A1.2(c) as a whole, or either of its subsections…is a question of federal law, not state law…." 915 F.2d at 763. Pursuant to *Unger*, this Court is unpersuaded by Defendant's attempt to classify the statute based solely on its location outside Title 17-A, the Maine Criminal Code.

The Government, having posited a "greater risk of harm" distinction, relies in part on *Unger* to argue that a violation of a protective order is not similar to contempt of court. In so doing, they distinguish an oral decision by Judge Hornby at the sentencing hearing in *United States v. Driggers,* Docket # 04-09-P-H (June 25, 2004), in which he found a violation of conditions of release similar to contempt of court because both involved disobedience of a court's lawful order. *Id.* at 3 (Docket # 27 – Ex. A).

There is some suggestion in *Driggers* that violation of a protective order could be similar to contempt of court. Judge Hornby referred to *United States v. Spaulding,* 339 F.3d 20 (1st Cir. 2003), in which the defendant violated conditions of release by contacting his ex-wife, conduct also prohibited by a protective order, *id.* at 22-23;[7] *Driggers* at 4, and he noted that the parties never presented to the First Circuit or to him the argument that a violation of "two court orders" was similar to contempt, but he did not reject the comparison nor did he draw any express distinction between the two types of orders. *Id.* at 4.

*Spaulding* assists this Court by setting forth relevant considerations. 339 F.3d at 22-23. In *Spaulding,* the defendant argued that because he did not physically harm his ex-wife, his conduct in violating his conditions of release was similar to disturbing the peace, which is usually not countable. U.S.S.G. § 4A1.2(c)(1). The First Circuit

---

[7] The defendant in *Spaulding* was adjudged guilty of violating the terms of his release, not the protective order, the latter charge being dismissed. *Spaulding,* 339 F.3d at 22 n.2. *Spaulding*, though of assistance, is not dispositive.

4

dispatched the defendant's argument. *Spaulding* noted that a "violation of a court order is a more serious offense than a run-of-the-mill public-disturbance case." 339 F.3d at 23. By way of explanation, *Spaulding* pointed out that the Sentencing Guidelines elsewhere treat crimes committed "while under court supervision as more serious than other crimes", and that a violation of a court order as compared to a public disorder offense, "demonstrates a higher risk of recidivism", because the defendant "regarded the criminal justice system with so little respect that he was willing to violate… judicial orders." *Id.* (citing U.S.S.G. § 4A1.1(d)).

Here, the comparison is not to disturbing the peace, but to contempt of court. Nevertheless, a violation of a condition of supervised release and a violation of a protective order are "crimes committed while under court supervision", and share similar, if not identical elements. *See id.* at 22-23. Because of these similarities, *Spaulding* strongly suggests the two crimes should be treated the same. However, this Court does not reach its conclusion on that basis alone. *Spaulding* lays out another factor to consider when determining whether the crimes are similar in substance per *Unger,* namely the "relative danger posed by each". *Id.* at 22. To evaluate this factor, this Court turns to the substance of Maine law governing violations of protective orders. As it turns out, Maine law answers the question of relative danger.

Title 19-A, governing protective orders, draws a distinction, significant here, between more serious violations treated as Class D crimes and more benign violations treated as contempt. Mr. Perkins' conduct falls in the former category. Per 19-A M.R.S.A. § 4011, a violation of a temporary, emergency, interim or final protective order

5

or a court-approved consent agreement is a Class D crime.[8]  *Id.* at (1).  However, the statute expressly exempts less serious violations, such as the failure to pay temporary support or the failure to receive counseling. 19-A M.R.S.A. § 4007(1)(H)-(M). When such conditions are violated, the "violation must be treated as contempt and punished in accordance with law". 19-A M.R.S.A. § 4011(2).  When paragraphs A to G of section 4007, subsection 1 are violated, the violator is subject to criminal sanction, not contempt. More serious violations include threatening or harassing the protected individual(s), possession of a dangerous weapon, stalking, trespassing, and unauthorized contact.  The last was the conduct punished in the instant case.

The violations listed in § 4007(1)(A)-(G) are generally not just of a court order, but also present risk to others (e.g. threatening another, possession of a dangerous weapon, etc.).[9]  This difference, increased danger to a victim, would explain why Maine law treats these violations as Class D crimes, punishable by up to 364 days in prison. *See* 17-A M.R.S.A. § 1252(2)(d)("In the case of a class D crime, the court shall set a definite period of less than one year").  In contrast, violations of (H)-(M), with less risk to others, are treated as contempt and punished less severely.[10]

---

[8] Maine law now provides an escalated penalty for more egregious violations.  If the defendant violates the protective order through conduct "that is reckless and that creates a substantial risk of death or serious bodily injury" or the defendant "assaults the plaintiff named in the protective order," it is a Class C crime. 19-A M.R.S.A. § 4011(4).  This change, however, took place after Mr. Perkins was found guilty of violating the protective order. 2001 Me Laws c. 420, § 2 (codified at 19-A M.R.S.A. § 4011(4)).

[9] Indeed, these violations appear more in line with the purpose of creating a special statutory crime of violation of a protective order in the first place:  the need to protect victims.  *See* 19-A M.R.S.A. § 4001 ("the court shall liberally construe and apply this chapter to promote the following underlying purposes:…to recognize domestic abuse as a serious crime against the individual and society…to allow family and household members who are victims of domestic abuse to obtain expeditious and effective protection against further abuse…to provide protection by promptly entering and diligently enforcing court orders that prohibit abuse…to expand the power of the justice system to respond effectively to situations of domestic abuse"); *State v. Falcone,* 2000 ME 196, ¶ 7, 760 A.2d 1046, 1048-49 (noting "the express statutory purpose of protecting the victim").

[10] Effective July 1, 2003, Rule 42 of the Maine Rules of Criminal Procedure, governing criminal contempt, was abrogated except for a cross-reference and a statement that Rule 66 of the Maine Rules of Civil

In *Driggers,* Judge Hornby concluded that "violating a condition of release covers a wide range of activity…it can range from failing to stay employed, to contacting a victim, to possessing a firearm, to failing to give notice of a change of address, all kinds of different things can be a violation. And it makes sense therefore that just like contempt can cover such a wide range of activities that counting them should depend upon the sentence imposed because the sentence will reflect the underlying seriousness of the violation". *Driggers* at 5. *See also United States v. Tigney,* 367 F.3d 200, 202 (4th Cir. 2002)("the phrase 'contempt of court' is generic, embracing within its legal signification a variety of different acts")(citation omitted). Violation of a protective order could also cover a range of activity, as is evidenced by the (A)-(M) provisions of section 4007(1), and since Mr. Perkins received no jail time, the Court could conclude consistent with *Driggers* that the sentence is the best lodestar for the seriousness of the violation.

The better indicator of the seriousness of the violation here, however, is what Mr. Perkins did to commit this crime. Maine law distinguishes between violations treated as Class D crimes and those treated as contempt; a distinction based on risk of harm, a relevant *Spaulding* consideration. *See* 339 F.3d at 22. Since Defendant's conduct in this

---

Procedure now applies to both criminal and civil contempt. *See* Me. R. Crim. P. 42 advisory committee note (2003) ("collapsing the current two rules into one" eliminates any unnecessary confusion posed by the existence of two different contempt proceeding tracks). Rule 66 provides three different types of procedures: (1) summary procedures for contempt occurring in the actual presence of the court, in which both remedial and punitive sanctions may be imposed summarily; (2) plenary proceedings for contempt occurring either outside the court's presence (required) or within it (optional), seeking either (a) remedial or (b) punitive sanctions. *See Desjardins v. Desjardins,* 2005 ME 77, ¶ 6, 876 A.2d 26, 28. Punitive sanctions are limited to just 30 days imprisonment and a $5000 fine in a summary proceeding, and in both types of proceeding such sanctions must be "proportionate to the conduct constituting the contempt". Me. R. Civ. P. 66(b)(3) & (c)(3). Remedial sanctions in either proceeding include imprisonment "until such person performs the affirmative act required by the court's order", as well as coercive and compensatory fines. *Id.* at (d)(3).

Rule 66 does "not apply to the imposition of sanctions specifically authorized by other provisions of these rules or by statute". Me. R. Civ. P. 66(a)(1). One such statute is 14 M.R.S.A. § 252, generally governing summary process for civil contempt where a decree is disobeyed and allowing "any reasonable fine or imprisonment the case requires". *Id.*

case was treated as a Class D crime, it must have fallen on the side of the line reserved for heightened-risk activity. Consequently, this Court concludes that his violation in contacting a protected person was less like contempt of court and more like a more serious criminal violation.[11]

It is true that Mr. Perkins was not incarcerated for this violation, but the Maine District Court imposed a fine that was not unsubstantial and here, his actual conduct trumps the penalty. This Court concludes that his criminal violation of a protective order under Maine law is not "similar" to contempt for purposes of § 4A1.2(c), and the assignment of a criminal history point to Mr. Perkins was correct.[12]

### ii. Possession of a Firearm: § 5C1.2(a)(2)

The second criterion a defendant must meet to qualify for the "safety valve" is that he "did not…possess a firearm or other dangerous weapon…in connection with the offense". U.S.S.G. § 5C1.2(a)(2).[13] It is not disputed that a number of firearms were recovered on the property where the marijuana plants were grown. *Def.'s Presentencing*

---

[11] While plenary proceedings for punitive sanctions must generally proceed "as provided by the Maine Rules of Criminal Procedure for the prosecution of a Class D crime", Rule 66(c)(2), the limitation of that categorization only to a certain type of contempt proceeding suggests that all other types of contempt proceedings allowed under the Rule are not treated as Class D crimes. Furthermore, the express distinction in section 4011 between "contempt" and a "Class D crime" indicates that a difference between the two was contemplated by the drafters. *See also Cooke v. Naylor,* 573 A.2d 376, 377-78 (Me. 1990)(construing the former "Domestic Protection from Abuse Act", 19 M.R.S.A. §§ 761-770, and noting that punishment under the Act arises only after a protective order has been violated and arrest follows "for contempt or for a Class D crime")(emphasis supplied).

[12] Searching beyond the confines of the First Circuit, this Court could find no case ruling directly on this issue. In *United States v. Irons,* 196 F.3d 634 (9th Cir. 1999), the Court ruled that a sentence for a conviction for violating a protective order was properly counted for purposes of calculating the defendant's criminal history. The issue, however, was "single common scheme or plan" and the Court did not address whether it was similar to contempt of court.

[13] This Court's conclusion that Mr. Perkins has two criminal history points by itself removes him from safety valve eligibility. Nevertheless, at sentencing this Court will address the § 5C1.2(a)(2) & (a)(5) issues, since either could provide an independent ground for safety valve ineligibility or, alternatively, if decided in favor of Mr. Perkins, would narrow the range of issues on appeal.

*Brief* at 4. What is disputed is whether any of the firearms were possessed "in connection" with the growth of marijuana.

Since the safety valve provision serves to reduce a sentence below the statutory mandatory minimum, Defendant bears the burden of proving each element at sentencing, including that he did not possess a weapon in connection with the offense. *United States v. Morrisette,* 429 F.3d 318, 324 (1st Cir. 2005)(citation omitted); *United States v. Richardson,* 225 F.3d 46, 53 (1st Cir. 2000)(citation omitted). The standard is preponderance of the evidence. *United States v. Miranda-Santiago,* 96 F.3d 517, 529 n.25 (1st Cir. 1996).

The Government alleges that "numerous firearms were located in the main house. In addition, one rifle was found upstairs in the garage/shed, propped across a chair that overlooked the outdoor marijuana grow. Although the weapon was unloaded, ammunition for this firearm was within arm's reach". *Gov.'s Mem. in Aid of Sentencing* at 4. The Government argues that one should infer from these facts that the weapon was used as a means of protecting the crop. *Id.* In contrast, Defendant argues that the only weapon charged in the indictment was an unloaded one found in the garage and ammunition was "seven to ten feet away". *Def.'s Presentencing Brief* at 5-6. He argues there was no evidence that Mr. Perkins was selling or distributing the marijuana, and it was used only for his and his son's personal use. *Id.* at 5. Consequently, Defendant contends that it is illogical to conclude that the weapon was intended to protect the crop. *Id.* Coupled with the fact that the land where the marijuana was found was part of a family hunting camp, where it may be expected to find guns; Defendant argues that he can satisfy his burden. *Id.* at 6.

Specific facts await findings at sentencing. However, to assist the parties, this Court notes that the First Circuit provided guidance on this issue in *United States v. McLean,* 409 F.3d 492 (1st Cir. 2005), which states that safety valve ineligibility may rest on constructive possession of firearms. The justification is that "a defendant who, for example, has a concealed weapon strategically placed in a room where he conducts his drug business is no less dangerous than a defendant who conducts his business with a weapon on his person". *Id.* at 501. More specifically, the First Circuit has the following to say regarding constructive possession:

> 'Constructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object either directly or through others.' [*United States v. Carlos Cruz,* 352 F.3d 499, 510 (1st Cir. 2003)]; *see also United States v. Nieves-Burgos,* 62 F.3d 431, 437-38 (1st Cir. 1995); *United States v. Torres-Maldonado,* 14 F.3d 95, 102 (1st Cir. 1994); *United States v. Garcia*, 983 F.2d 1160, 1164 (1st Cir. 1993). As is true of actual possession, constructive possession does not require actual ownership of the weapon, [*see United States v. Liranzo,* 385 F.3d 66, 69 (1st Cir. 2004)] and can be sole or joint, [*see United States v. Van Horn,* 277 F.3d 48, 54-55 (1st Cir. 2002)]. Moreover, the requisite knowledge and intention can be inferred from circumstances, such as a defendant's control over the area where the contraband is found (e.g., defendant's home or automobile) [*see United States v. Zavala Maldonado,* 23 F.3d 4, 7-8 (1st Cir. 1994)]. But knowledge must be fairly inferable from the circumstances. *See id.* at 7; *United States v. Booth*, 111 F.3d 1, 2 (1st Cir. 1997)(knowing possession required); *see also United States v. Weems*, 322 F.3d 18, 24 (1st Cir. 2003)(mere proximity to a firearm is not enough to establish actual or constructive possession); *Garcia*, 983 F.2d at 1164 ('Mere presence or association with another who possessed the contraband is, however, insufficient to establish constructive possession') Thus, 'there must be some action, some word, or some conduct that links the individual to the contraband and indicates that he had some stake in it, some power over it.' *In re Sealed Case,* 323 U.S. App. D.C. 128, 105 F.3d 1460, 1463 (D.C. 1997).

*Id.*

### iii.  Failure to Truthfully Disclose Information: § 5C1.2(a)(5)

The Government states that Mr. Perkins is additionally ineligible for the safety valve because he failed to truthfully disclose information. *Gov.'s Mem. in Aid of*

10

*Sentencing* at 3-4. *See* U.S.S.G. § 5C1.2(a)(5)(stating the criterion as follows: "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement").

Here, the Government has offered no explanation for its conclusion. Defendant bears the burden of proving to the Court that he has provided complete and truthful information. *See, e.g., United States v. Marquez*, 280 F.3d 19, 23 (1st Cir. 2002)(citation omitted); *United States v. Matos,* 328 F.3d 34, 39 (1st Cir. 2003)(citations omitted). Defendant suggests there is in the Government's position the "implication that Defendant grew marijuana for the purpose of selling it, with the suggestion that he ran a marijuana distribution scheme, yet refused to share information about the distribution system to the government. Yet Defendant has consistently denied selling marijuana and presented an alternative explanation, to wit that he gave a significant amount of marijuana to his opiate-addicted son and retained the balance for personal use." *Def.'s Reply to the Gov.'s Mem. in Aid of Sentencing* at 1. Defendant notes that he has met several times with the Government and "with the exception of one piece of paper with some initials and numbers scribbled on it, the Government found nothing in the course of the law enforcement search that would indicate that the Defendant sold marijuana." *Id.* at 2.

"When the record, taken as a whole, will not support a finding that the defendant has failed to provide a truthful and complete proffer, the government's lack of confidence

in the proffer is insufficient, in and of itself, to justify a denial of access to the safety valve." *Marquez,* 280 F.3d at 24.  *See also Matos,* 328 F.3d at 42 ("…the sentencing court has both the power and the coign of vantage to permit it to deal effectively with such situations. Our case law gives trial judges broad discretion to find safety valve eligibility in spite of government opposition, unintentional bevues, immaterial omissions, or bona fide misunderstandings.")(citations omitted).  The Court will resolve at sentencing whether the record is sufficient to justify the granting of this safety valve provision on the grounds of sufficient disclosure.

### b.  Standard of Proof

When Mr. Perkins pleaded guilty on April 11, 2005 to violating 21 U.S.C. § 841, he admitted the Government's Version of the Offense, which stated that during a search of his residence, "agents discovered approximately 99 mature marijuana plants growing along the tree line of the property." *Gov.'s Version of the Offense* at 1 (Docket # 3).  The Presentence Report found that the total number of plants seized was 175.  The one plant difference between 99 and 100 plants could mean for Mr. Perkins the difference between 18 to 24 months and 60 months in jail.  Under 21 U.S.C. § 841(b)(1)(B)(vii), if the defendant possessed "100 or more marijuana plants", he "shall be sentenced to a term of imprisonment which may not be less than 5 years", but under 21 U.S.C. § 841(b)(1)(C), if he possessed "50 or more marijuana plants", no mandatory minimum applies.[14]

---

[14] This issue is more complicated than it appears at first blush.  The information explicitly charged (b)(1)(C), based on "50 or more marijuana plants", the plea agreement states that the maximum penalty which could apply to the Defendant is 20 years, and the Government's version states that "approximately 99 mature marijuana plants" were discovered. (Docket #s 1, 3, 6).  These filings suggest that (b)(1)(C) is the relevant provision, but at the Rule 11 on April 11, 2005, the Government noted that there was a possibility of a mandatory minimum under (b)(1)(B) because of the number of plants. *Transcript* at 15-16 (Docket # 43).  The Court instructed the Defendant that in the event it is determined that at least 100 plants were involved, the provisions of (b)(1)(B) would apply. *Id.* at 18-19.

Defendant has disputed the number of marijuana plants on his property that were actually his.[15] Citing *United States v. Malouf,* 377 F. Supp. 2d 315 (D. Mass. 2005), *United States v. Jones,* 526 U.S. 227 (1999), and the "evolution of the court system's thinking on the matter of sentencing", he asserts the standard of proof for determining drug quantity must be beyond a reasonable doubt. *Def.'s Presentencing Brief* at 6-9. The Government, relying on the continuing validity of *United States v. Harris,* 536 U.S. 545 (2002), disagrees. *Gov.'s Mem. in Aid of Sentencing* at 5-6.

In *Harris,* the Supreme Court held that factors which increase the defendant's minimum sentence but do not raise it above the statutory maximum may be determined by the judge and the standard is preponderance of the evidence. 536 U.S. at 568. *See also United States v. Goodine,* 326 F.3d 26, 31-32 (1st Cir. 2003)(applying *Harris* to determine that drug quantity under § 841 may be determined by a preponderance of the evidence); *United States v. Robinson,* 241 F.3d 115 (1st Cir. 2001). However, in *United States v. Blakely,* 542 U.S. 296 (2004), the Court held that all facts "essential to the punishment" must be subject to Sixth Amendment protections, *id.* at 304, and in *United States v. Booker,* 543 U.S. 220 (2005) it held that "any fact (other than a prior conviction)

---

*Sua sponte,* this Court raised the question of whether the Government could (assuming its burden was met) attribute more than 100 plants to the Defendant, when it had expressly charged that the relevant penalty provision was § 841(b)(1)(C). At the hearing on Defendant's Motion to Withdraw Guilty Plea, the Court questioned the Government on this issue and counsel responded that the purpose of the quantity allegation and penalty provision in the information was to satisfy *Apprendi v. New Jersey,* 530 U.S. 466 (2000). This Court agreed that the § 841(b)(1)(C) charge in the information does not preclude the imposition of a five-year minimum under § 841(b)(1)(B), so long as the actual sentence imposed does not exceed the statutory maximum of 20 years under § 841(b)(1)(C). *See United States v. Eirby,* 262 F.3d 31 (1st Cir. 2001). *See also United States v. Molina,* 407 F.3d 511, 525-26 (1st Cir. 2005)("It is apodictic that erroneous statutory citations in an indictment do not constitute grounds for reversing a conviction, as long as the defendant was on fair notice of the charges against him"). The Court verified with Defendant at the hearing that his quarrel was not any legal issues with the information and its penalty allegation, but rather with the factual question of the number of plants potentially attributable to him for sentencing purposes and the standard by which that number was to be decided.

[15] Out of the 175 plants found, Defendant admits ownership of only of 79.

which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 244.

Defendant argues that the same logic that underlies *Booker* and *Blakely* should apply to statutory minimums. In *Malouf*, Judge Gertner sympathizes with his argument: "if Federal Sentencing Guidelines troubled the majority in *Booker*...mandatory minimum provisions are likely to be of even greater concern." 377 F. Supp. 2d at 324-25. Judge Gertner surveyed contemporary case law and determined that while a number of courts have avoided the issue, "the breadth of the holdings in *Booker* and *Blakely* have in fact overruled *Harris*". *Id.* at 326 (emphasis in original). Nevertheless, *Booker* did not discuss *Harris,* and did not expressly overturn it. Furthermore, *Blakely* distinguished a case involving a statutory minimum. 542 U.S. at 304 ("Neither case is on point. *McMillan* involved a sentencing scheme that imposed a statutory minimum if a judge found a particular fact…We specifically noted that the statute 'does not authorize a sentence in excess of that otherwise allowed for [the underlying] offense.' *Id*., at 82…*cf*. *Harris*, *supra*, at 567…")(emphasis in original).

The Supreme Court has never formally overruled *Harris* and *Malouf* appears to be the only decision against its continuing validity.[16] Other circuits have concluded that, though it may be difficult to reconcile with the Supreme Court's more recent decisions, *Harris* remains good law. *See United States v. Mackie,* No. 04-5954-cr, 2005 U.S. App. LEXIS 26442, *4 (2d Cir. Dec. 2, 2005)(unpublished); *United States v. Everett,* No. 05-

---

[16] Likewise, the First Circuit has never overruled *Goodine,* which applied the principles of *Harris* to § 841. *See United States v. Casas,* No. 02-1677, 2005 U.S. App. LEXIS 21960, *66 n.57 (1st Cir. Oct. 7, 2005)(post *Booker* and *Blakely,* citing *Goodine* for the proposition that there is no *Apprendi* violation if drug quantity influences the sentence but the resulting sentence is still below the default statutory maximum).

4696, 2006 U.S. App. LEXIS 2394, *2 (4th Cir. Jan. 31, 2006)(unpublished); *United States v. Duncan*, 413 F.3d 680, 683 (7th Cir. 2005)("Nothing in *Booker* or *Blakely* suggests that the Court reconsidered, much less overruled, its holding in *Harris*"); *United States v. Dare,* 425 F.3d 634, 641 (9th Cir. 2005)("We cannot question *Harris'* authority as binding precedent"); *United States v. Ferguson,* No. 05-10394, 2005 U.S. App. LEXIS 24848, *11 (11th Cir. Nov. 16, 2005)("[W]e have continued to follow *Harris* in light of *Blakely* and *Booker*")(unpublished).

Furthermore, in *United States v. Bermudez,* 407 F.3d 536 (1st Cir. 2005), handed down slightly before *Malouf,* the First Circuit cited *Harris* with approval and noted that:

> [R]efusals to reduce a statutory sentence based on judicial factfinding do not violate the defendant's Sixth Amendment rights. *See Harris v. United States,* 536 U.S. 545, 558-60, 153 L. Ed. 2d 524, 122 S. Ct. 2406 (2002)(judicial factfinding triggering a statutory mandatory minimum does not trigger the Sixth Amendment). Only judge-found facts that serve mechanically to raise defendant's sentence above that authorized by the jury verdict or guilty plea amount to Sixth Amendment violations. *Booker*, 125 S. Ct. at 756. Bermudez does not claim that judicial factfinding served to raise his sentence above that authorized by his guilty plea; rather, he claims that judicial factfinding prevented him from getting a potentially lower sentence than what he might have gotten absent that judicial factfinding. Such a claim simply does not implicate *Blakely*.

*Id.* at 545.[17]

Time may prove Judge Gertner correct. However, until the Supreme Court or the First Circuit resolves the issue, this Court will continue to apply *Harris*. *See Rodriguez de Quijas v. Shearson/American Exp., Inc*., 490 U.S. 477, 484 (1989)("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions"). *See also*

---

[17] The First Circuit has made it clear that it is the judge, not the jury, responsible for determining the factual basis for a sentencing enhancement, "so long as the statutory ceiling is not raised" and the standard is "only a preponderance of the evidence". *United States v. O'Brien*, 435 F.3d 36, 41 (1st Cir. 2006).

*Mackie,* 2005 U.S. App. LEXIS 26442 at *4. What is true for the court of appeals is at least as true for the district court. The standard of proof on the issue of drug quantity is by preponderance of the evidence.

### III.     Conclusion

This Court assesses one criminal history point under U.S.S.G. § 4A1.1 for Larry N. Perkins' April 11, 2001 conviction for violating a protective order. Based on the evidence presented at the sentencing hearing, this Court will decide whether he possessed a firearm in connection with his drug offense under U.S.S.G. § 5C1.2(a)(2) or failed to truthfully disclose information under § 5C1.2(a)(5). Finally, applying a more probable than not standard of proof, this Court will determine based on evidence at the hearing the number of marijuana plants attributable to Mr. Perkins.

**SO ORDERED.**

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of March, 2006